## DE SAVITSCH v. PATTERSON.
### No. 9136.

United States Court of Appeals
District of Columbia.

Argued May 21, 1946.

Decided Dec. 16, 1946.

PRETTYMAN, Associate Justice, dissenting.

Mr. Austin F. Canfield, of Washington, D. C., with whom Messrs. William T. Hannan and Irving Wilner, both of Washington, D. C., were on the brief, for appellant.

Mr. Rudolph H. Yeatman, of Washington, D. C., with whom Messrs. William Stanley, J. Edward Burrough, Jr., and Carl McFarland, all of Washington, D. C., were on the brief, for appellee. Mr. Homer Cummings, of Washington, D. C., also entered an appearance for appellee.

Before CLARK, WILBUR K. MILLER, and PRETTYMAN, Associate Justices.

CLARK, Associate Justice.

Reviewing the complaint in the light of the defenses, affidavits and exhibits before the trial court, it is our opinion that the plaintiff made out a case requiring a trial on the merits. There are, we think, very real and genuine questions of fact raised

which ought not to have been disposed of, as they were, by summary judgment.

■ The actionable nature of the publications is, we think, apparent from an analysis of a few specific items. It was said in the second paragraph of the story published January 25, 1944, that there had been an attempt "to force the appointment of a Russian born protege to the permanent staff of Glenn Dale Sanitarium". The undisputed facts are that at the time the attempt allegedly was made plaintiff was already a member of the regular consulting surgical staff of the Sanitarium and served as such for three years. This is what he asked for initially and received prior to his letters by Senator Guffey. The follow-up after this appointment was directed toward securing more work. It does not appear to us that the above quoted commentary was fairly deduced from official records, letters and admissions available.

Throughout the articles such terms as "suave" and phrases like "whose social graces have won him many feminine clients"; when read in their full context by the average reader strongly and unmistakably suggests that the plaintiff was a foreign born imposter attempting to push himself through political assistance and personal charm, while suffering an absence of professional competency. It is not enough to say that such a word as "suave" standing alone is not libelous. Obviously it is not. Similarly it may well be when used in a reference situation which suggests a damaging connotation. We note also that the word "experiment" was used in reference to the work which the plaintiff sought to perform at Glenn Dale. Nothing supports this charge. The work which the plaintiff sought was by no means experimental and the charge clearly suggests that it was the plaintiff's desire to improve his skill, and perhaps perform unauthorized operations on indigent patients at the public expense.

■ We would be the last to deny that the public interest in information, particularly on matters of public health and welfare, is so great as to create a "privilege" for the press. We think it well established that this privilege is not unqualified. See Washington Times Co. v. Bonner, 66 App. D. C. 280, 86 F.2d 836, 110 A.L.R. 393. Compare Sweeney v. Patterson, 76 U.S. App.D.C. 23, 128 F.2d 457. The privilege which extends to the Press in these matters is but one side of an equation which constantly appears before the courts. The other side, and one not to be forgotten nor lightly disposed of, is the right of the individual not to be wantonly maligned or injured by publications. We do not think that in this case the "privilege" is sufficient to provide a journalistic license to the defendant for the comments made regarding the plaintiff. It is argued that the articles went only to plaintiff's ability as a thoracic surgeon. This argument is without merit. The official reports may have gone only to that segment of his ability but the commentary clearly and obviously cast a dark shadow over the plaintiff's entire professional ability.

In this setting, with clear misstatements and erroneous interpretations of official reports, the question of malice becomes a significant one. In the affidavits which the trial court had before it we feel there is to be found a good bit more than the mere suggestion of malice. Mrs. Patterson admits that after having employed plaintiff as a physician for a number of calls she discharged him and in her deposition continually refers to him as a physician of no worth. The fact, coupled with the very clear personal relationship which is shown by exhibits of record and considered in the light of plaintiff's positive charge of malice, is sufficient we think to raise the issue for trial.

■ The "fairness" of comment is an item of defense that can only be judged in its entire setting. The difficulty and confusion in thinking which attends published commentary on an individual's conduct has been characterized as follows:

"The error which is usually committed by those who bring themselves within the law of libel when commenting on conduct is in thinking that they are commenting when in point of fact they are misdescribing. Real comment is merely the expression of opinion. Misdescription is matter of fact. If the misdescription is such an

unfaithful representation of a person's conduct as to induce people to think that he had something dishonorable, disgraceful, or contemptible, it is clearly libelous. To state accurately what a man has done, and then to say that in your opinion such conduct is disgraceful or dishonorable, is comment which may do no harm, as every one can judge for himself whether the opinion expressed is well founded or not. Misdescription of conduct, on the other hand, only leads to the one conclusion detrimental to the person whose conduct is misdescribed, and leaves the reader no opportunity for judging himself for the character of the conduct condemned, nothing but a false picture being presented for judgment."[1]

It seems quite clear in the instant case that the newspaper reached out beyond the bounds of its protective shield. The public interest in the matter of the investigation of the District Health Department does not, in our opinion, overcome the private right to be free from attacks calculated to injure professional standing, when, as here, that attack goes beyond the official reports upon which it is said to be predicated.

 We think that any average reader would gain the impression from this series of articles that the plaintiff was a fake, in the sense that he promoted himself by political sponsorship and personal charm, rather than by professional ability. The publications, read in the light of the average reader's understanding, undoubtedly were calculated to damage the plaintiff's professional standing. The rigid tests for what amounts to "libel per se" do not appear to have any real foundation in the law of libel. The true test should be whether the published materials, particularly the paper's own commentary, are reasonably calculated to injure the plaintiff in his trade, profession or community standing. If such appears to be the case, it then devolves upon the defendant to defend himself with pleadings of truth, fair comment, and non-libel. Where, as here, there is assembled for the trial judge a substantial amount of factual material, and he is asked to enter a summary judgment in favor of the defendant, extreme care must be taken on the matter of deciding whether there is a "real issue" of fact. Summary judgment will not lie if such real issue appears. Here the truth of the underlying official reports is challenged. (This makes no difference if the "privilege" on the part of the paper is absolute, but if the "privilege" is conditioned upon the truth of the reproduced report, a real issue is thereby created.)

Further, it is clear that here much of the comment is false, according to the pleadings and affidavits before the trial court. De Savitsch denied that he had admitted to anyone that "he had no right to use the 'de' prefix" to his name. He denied that he instigated the letters which Guffey wrote to the Commissioners. He asserted actual malice, and Mrs. Patterson in her affidavit gave considerable support to this claim.

The effect of the summary judgment in such a situation is to extend to the press a license to take off from a foundation of an official report and run rough-shod over the unfortunate victim. The duty to inform the public and the right to make a "fair comment" ought not be so interpreted as to prejudice the individual's rights to protect himself in the courts when he is attacked.

The least that the paper should be called upon to do is come in and defend itself on the merits, when it has published inherently damaging materials. This is no burden on the "freedom of the press", it simply calls upon the press to exercise some care in discharging its responsibility to the entire public—individuals and mass alike. The judgment below is reversed and the case remanded for trial on the merits.

Reversed and remanded for further proceedings in accordance with this opinion.

PRETTYMAN, Associate Justice (dissenting).

I think the judgment in this case should be affirmed. De Savitsch, having been designated a "consultant" on the medical

---

[1] Quotation from Christie v. Robertson, 10 New South Wales L.R. 157, reprinted in Freedom of Public Discussion, Van Vechten Veeder, 23 Har.L.Rev. 411, 423-4.

staff of Glenn Dale Sanatorium, and being anxious to do some research work, desired opportunity to perform major thoracic surgery on the patients there. This was a public post of importance, requiring high professional skill. He sought and received the support of Senator Guffey in that effort. Being without available data as to his competency, and De Savitsch being unable to furnish satisfactory references, the District authorities directed two experimental observations of his work. The formal official report of the observers was that he was not sufficiently well-trained. De Savitsch wrote to Senator Guffey and also to Dr. Ruhland, attacking the official report. The Senator transmitted the correspondence to the Commissioners and wrote to them, saying, "I guess the only hope I can have to get anything done in the Health Department is to turn the matter over to Senator McCarran or have a Special Senate Committee appointed to investigate the Health Department * * *." As a matter of fact, an investigation of the Health Department and the Commissioners did take place, and a subcommittee of the Senate recommended the dismissal of various health officials and one Commissioner. The next day after that report was submitted, some unidentified person released to the press Senator Guffey's letters. Appellee immediately took up the cudgels in energetic fashion in an attack on such interference and threats in District affairs. The articles complained of in the case at bar are directed primarily to that subject, a matter of high local public importance. De Savitsch, perhaps unfortunately, was the fact about which the controversy raged, but he was not, so far as appears from the articles, the objective.

It seems to me (1) that De Savitsch, having made himself an applicant for a public post requiring professional skill of high order, made his own professional skill a subject of fair public comment, even though vigorous and adverse; (2) that by seeking political support to counteract an adverse official report on his competency, he invited the sort of publicity which he got; and (3) that the content of the newspaper articles did not go beyond the content of the official report. To be sure, the respective styles of the articles and the report were different, but the adjectives of the newspaper were not more devastating, in my opinion, than the cold objectivity of the formal report. The dark shadow which the court says was cast over appellant's professional ability, was cast by the official report, not by the newspaper. Appellant, himself, initially raised, and subsequently fostered, the issues discussed by the newspaper. Since it was a matter of public importance, I do not think that he should be heard to complain if he was hurt in the course of the discussion. I think the trial court was right in entering summary judgment.