**BOYCE et al. v. BUSCAGLIA.**

**Civ. No. 5089.**

District Court, Puerto Rico.

June 2, 1948.

E. T. Fiddler, of San Juan, P.R., for plaintiffs.

George A. Malcolm, Atty. Gen. of Puerto Rico, for Rafael A. Buscaglia, Treasurer of P. R.

CHAVEZ, District Judge.

This suit was brought by the plaintiffs as Trustees of an express trust praying the Court for instructions as to their duty to their beneficiaries in connection with amounts which they withhold from dividends payable to the latter as income tax payable to the Treasurer of Puerto Rico under the Insular Income Tax laws. The Treasurer of Puerto Rico and The National City Bank of New York as withholding agent were made parties.

The instructions requested are as follows:

1. That the Court instruct these plaintiffs as to whether or not they are required to withhold any amounts whatsoever from dividends due to their beneficiaries not residing in Puerto Rico.

2. That this Court instruct these plaintiffs as to whether or not they are required to withhold any amounts whatsoever from payments due to their beneficiaries who are citizens of States of the United States.

3. That this Court instruct these plaintiffs as to whether or not these Trustees may pay in the United States dividends due to beneficiaries not residing in Puerto Rico without withholding any part thereof for payments to the Treasurer of Puerto Rico.

The facts as stated in the complaint are as follows:

The plaintiffs are Trustees of an express trust entered into in Baltimore, Maryland, on January 16, 1934. Of the Trustees six are residents of States of the United States and one is a resident of Puerto Rico. They are engaged in planting, cultivating and processing sugar·cane in Puerto Rico and in processing of sugar cane of independent farmers. The interests of the beneficiaries of the Trust are represented by shares of beneficial interest.

The trustees pay income tax to the Government of Puerto Rico on the net income earned by them, under the provisions of the Income Tax Act of 1924 of Puerto Rico, Laws 1925, No. 74, as amended. They distribute from time to time a certain part of

the net income over and above the amount paid as income tax, among their beneficiaries in proportion to the shares held by them. During the fiscal year beginning July 1, 1947, the Trustees directed three payments to the preferred shareholders at the rate of $1.25 per share. These payments were made on August 20, 1947, November 20, 1947, and February 20, 1948. Lists of the preferred shareholders are attached to the complaint. The amounts to which the preferred shareholders were entitled were delivered to the San Juan Branch of The National City Bank of New York for payment to the beneficiaries in San Juan or at the Bank's main office in New York, at the option of the respective beneficiaries.

The holders of preferred shares consist in part of citizens and residents of Puerto Rico, in part of corporations organized in States of the United States not doing business in Puerto Rico, and in part of citizens of States of the United States not residing in Puerto Rico. Under the provisions of Section 22 of the Income Tax Act of Puerto Rico, as amended, The National City Bank of New York as withholding agent has deducted and withheld from the amounts paid to each of the preferred shareholders who are not residents and not citizens of Puerto Rico, 29% of the amount thereof to be held and paid to the Treasurer of Puerto Rico.

The pertinent parts of Section 22 are as follows:

(A) All persons, in whatever capacity acting, including lessees or mortgagors of real or personal property, fiduciaries, employers, and all officers and employees of The People of Puerto Rico, and all corporations and partnerships having the control, receipt, custody, disposal, or payment of interest, rent salaries, wages, commissions, premiums, annuities, compensations, remunerations, emoluments, or other gains, dividends, participation in partnership and corporation profits, and other fixed or determinable annual or periodical profits or income, of any nonresident individual not a citizen of Puerto Rico, shall (except as otherwise provided in regulations prescribed by the Treasurer under Section 19) deduct and withhold from such annual or periodical gains, dividends, profits or income, a tax equal to twenty-nine % 29 per cent thereof; Provided, That in the case of securities whose owners are unknown, said tax shall be deducted and withheld from the interest on such securities. (As amended by Act No. 102, approved May 14, 1936, effective January 1, 1936. By Act No. 2, approved May 25, 1939, effective January 1, 1939. By Act No. 31, approved April 12, 1941, effective January 1, 1940. And by Act No. 20, approved December 3, 1942, effective July 1, 1942 and up to 90 days after the cessation of hostilities between the United States of America, Germany, Italy and Japan.)

(B) Every person, partnership or corporation obliged under this section to deduct and withhold any tax, shall make a return thereof, on or before March 15 of each year and shall, on or before June 15, pay the tax to the officer of The People of Puerto Rico, authorized to receive it. Every such person, partnership or corporation is hereby made liable for such tax and is hereby indemnified against the claims and demands of any person for the amount of any payment made in accordance with the provisions of this section. (As amended by Act No. 102, approved May 14, 1936, effective January 1, 1936. And by Act No. 31, approved April 12, 1941, effective January 1, 1940.)

Section 12 of the Income Tax Law of Puerto Rico of 1924, as amended, provides as follows: Sec. 12: There shall be levied, collected and paid for each taxable year on the net income of every individual a normal tax of seven (7) per cent of the amount of the net income in excess of the credits provided in Section 18, Provided, That on the income of every person not a resident who is not a citizen of Puerto Rico there shall be levied, collected, and paid for each taxable year, a normal tax of twenty-nine (29) percent on the amount of the net income.

Section 18(d) of the Income Tax Law of Puerto Rico of 1924, as amended, provides as follows: (d) The credit provided for under subdivisions (b) and (c) shall not be allowed in the case of a non-resident individual who is not a citizen of Puerto Rico. (As amended by Act No. 18 approved June 3, 1927, effective January 1,

1928. By Act No. 31, approved April 12, 1941, effective January 1, 1940. And by Act No. 20, approved December 3, 1942, effective July 1, 1942 and up to 90 days after the cessation of hostilities between the United States of America and Germany, Italy, and Japan.)

It is alleged in the complaint that under Section 18(d) of the Income Tax Act, non-resident individuals, including citizens of the States of the United States not residing in Puerto Rico, are denied credits allowed to citizens of Puerto Rico consisting of a personal exemption of $800 in the case of non-married persons, of $2,000 in the case of a married person living with husband or wife, and of $400 for each dependent. It is also alleged that Section 19(f) of the Act provides that no personal exemption or credits shall be allowed to non-resident individuals who are not citizens of Puerto Rico, and further that deductions allowed to these individuals shall not exceed 10% of their gross income from sources within Puerto Rico, and that no such limit is placed on deductions allowed taxpayers who are citizens of Puerto Rico.

Since Puerto Rico is not a State of the Union, it does not fall within Section 2 of Article IV of the Constitution generally known as the immunities clause.

However, on August 5, 1947, Section 2 of the Organic Act of Puerto Rico was amended by Congress of the United States adding the following clause at the end thereof: "The rights, privileges, and immunities of citizens of the United States shall be respected in Puerto Rico to the same extent as though Puerto Rico were a State of the Union and, subject to the provisions of Paragraph 1 of Section 2 of Article IV of the Constitution of the United States."

The Trustees maintain that if the amendment to the Organic Act above quoted applies to this situation, no part of the income payable to citizens of States of the United States should be withheld, and that if the above amendment does not apply to this situation, the Trustees would incur penalties to the Treasurer of Puerto Rico in case they did not withhold the tax and would be personally responsible therefor.

They also maintain that if they improperly withhold the tax and pay it into the Treasury, they might be subject to suits by their beneficiaries for the amounts withheld. They, therefore, ask for instructions of this Court as to their duties alleging that the jurisdiction of this Court depends on the fact that this is a suit of a civil nature arising under the Constitution and laws of the United States.

The Trustees also ask to be instructed as to whether or not they should withhold the tax in any case, whether or not the beneficiaries are citizens of States of the United States, in those cases where the beneficiaries receive their dividends in New York and therefore outside the jurisdiction of Puerto Rico. The question on this point is whether or not the Trustees, having transferred funds outside of Puerto Rico, are under any obligation whatsoever to this jurisdiction.

The Attorney General of Puerto Rico on behalf of the Treasurer of Puerto Rico filed a motion to dismiss the complaint alleging that the Court lacks jurisdiction because:

1. This is a suit against The People of Puerto Rico;

2. Because one of the plaintiffs is domiciled in Puerto Rico;

3. Because injunctive relief is prayed for which cannot be granted by this Court;

4. Because if the action is construed as one for a writ of mandamus, the Court cannot grant the relief prayed for; and

5. Because if the action is construed as one for a declaratory judgment, the Court cannot grant relief.

The motion to dismiss also maintains that the complaint fails to state a claim upon which relief can be granted because The People of Puerto Rico have provided ample legal machinery and adequate remedies for the settlement of all controversies arising on tax cases.

Briefs were filed and the motion was argued.

The Attorney General does not contend that this is not a suit arising under the Constitution and laws of the United States and has conceded that in a proper case

this Court has jurisdiction to instruct trustees as to their duties. The Attorney General has also abandoned the objection to jurisdiction based on diversity of citizenship.

The question boils down to whether or not this is a suit for injunctive relief under the Butler Act, 48 U.S.C.A. § 872, which provides that "No suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico shall be maintained in the District Court of the United States for Puerto Rico."

The Attorney General maintains that there is ample machinery and remedies for the settlement of this question within the jurisdiction of the Insular courts and that, therefore, this court should not assume jurisdiction.

Even assuming that the contention of the Attorney General is correct, the question remains as to whether the Court is relieved from instructing the Trustees as to the course which they should pursue in order to protect themselves against claims by their beneficiaries. The Court has jurisdiction over the parties and equity jurisdiction to instruct Trustees as to their duties. If the Butler Act were construed so as to prevent the Court from instructing the Trustees not to pay the tax, the Court's instructions to the Trustees would necessarily be that their only course is to pay the amounts withheld into the Treasury of Puerto Rico and seek to recover the amounts so paid, or to notify the beneficiaries of the procedure they must pursue if they desire to recover the amounts deducted and paid to the Treasury. Since the Trustees would have no other course, no beneficiary could complain that the Trustees had acted without due regard to their interests.

While the Butler Act is unequivocal in its terms, the questions remain (1) as to whether the Butler Act should be construed strictly to cover only cases where the direct objective of the suit is to restrain the assessment or collection of a tax, of (2) whether it should be subject to the implied exception that relief may be granted if there is no adequate remedy in the Insular courts.

Strictly construed, this may be considered as a suit for instructions and not to restrain the assessment or collection of a tax. If this Court should hold that the Butler Act must be so construed, it would, however, have to determine the basic question as to whether or not the amendment to the Organic Act relieves the Trustees from withholding taxes in the case of citizens of States of the United States, and would in effect have passed upon the liability of the Trustees and their beneficiaries to the Insular Government for taxes in advance of payment. While this Court feels that it is not precluded from deciding matters involving local taxation if they are properly before the Court, nevertheless, Federal Courts do not pass upon matters involving the liability to pay local taxes except under extraordinary circumstances and where it is absolutely essential to do so. The normal course is to allow tax questions to be decided in the local courts even though they involve constitutional questions. It is unnecessary and this Court does not decide whether or not the Butler Act should be strictly construed.

The only extraordinary circumstance which the Court should consider in this case is whether or not there is an adequate remedy in the Insular courts, and if there is no adequate remedy in the Insular courts, whether the Butler Act is nevertheless applicable and prohibits this Court from passing on the constitutional questions.

This Court is not prepared to hold that the Butler Act was intended to prevent this Court from taking jurisdiction of a case such as this provided it is clearly shown that there is otherwise no adequate remedy. The Constitutional Federal Courts, even before the existence of any statutory provisions, normally refused to enjoin the collection of taxes so as to avoid hampering the State governments, but often made an exception in cases where there was no adequate remedy at law. The Constitutional Federal Courts as distinguished from this Court, which is a statutory court, are now expressly prohibited from entertaining suits to enjoin the collection of a State tax "where a plain, speedy, and efficient remedy may be had at law or in equity in

the courts of such State." 28 U.S.C.A. § 41(1). Likewise, the declaratory judgments statute, 28 U.S.C.A. § 400, which is applicable to the Constitutional courts, makes a similar exception. It is doubtful whether the Butler Act intended to do more than to state the general principle and whether it was intended to prevent suits when there is no plain, speedy and efficient remedy. The Circuit Court of Appeals for the First Circuit stated in Paul Smith Const. Co. v. Buscaglia, 140 F.2d 900, that it had so far not been called upon to decide whether or not the Butler Act is subject to implied exceptions. One can readily imagine cases where there would be no remedy whatsoever in the Insular courts, in which case the question might arise as to whether the Butler Act itself were constitutional as prohibiting any action whatsoever to contest the validity of a tax. In such a situation, the question would be suggested as to whether or not the Butler Act itself does not violate the due-process clause of the Constitution, Amend. 14. In the view the Court takes of this case it is unncessary to decide that question at this time.

The plaintiffs contend that there is no remedy open to them as Trustees to contest the validity of the withholding tax therein involved; that although Section 22 (b) of the Income Tax Law purports to guarantee the withholding agent against claims or demands of other persons for the amounts of any payments which they make under the withholding provisions, this affords no remedy whatsoever to contest the validity of the tax at the time of payment; that no procedure whatever is provided for the enforcement of the guaranty; and finally that if they should be sued by their beneficiaries and have to reimburse them for the amounts withheld there is no assurance that they could recover the amount from the Insular Government. Moreover, the Trustees contend that the remedy of paying the tax and claiming a credit or refund is not open to them as they are not the persons burdened with the tax, citing Bank of America v. Anglim, 9 Cir., 138 F.2d 7. The Attorney General has not indicated that there is any machinery set up for the recovery under the guaranty referred to, and, in fact, has maintained that the Government cannot be sued unless it expressly consents. The Court does not find any express consent to this suit within the terms of the provision above referred to.

Nevertheless, the Attorney General has represented in writing to the Court that the Trustees under the Puerto Rican statute may apply to the Court of Tax Appeals for a determination of this matter in advance of paying the tax as outlined in Paul Smith Const. Co. v. Buscaglia, supra. This is a solemn representation of the Legal Representatives of the Government of Puerto Rico and is entitled to great respect.

This Court cannot overlook the fact, however, that even though the Attorney General may be of this opinion, the Tax Court and the Supreme Court of Puerto Rico may possibly have a different view. Neither can this court control the Puerto Rican courts on matters of local procedure. That is a matter which in last analysis must be determined by the Insular courts themselves.

If the Insular courts should hold that this procedure is not available to the Trustees, the Court might be inclined to hold that no real remedy is provided by the Insular Legislature and that regardless of whether or not the Butler Act should be strictly construed, it was not intended to cover a case where the Trustees as withholding agents do not have a fair opportunity to test the validity of the tax in the Insular courts.

It is unnecessary, however, to decide that question at this time. Since one of the main objectives of the Trustees in this case is to protect themselves from personal liability, the Court holds that the Trustees will be adequately protected if they pursue the course outlined by the Attorney General and apply to the Tax Court for relief. The Court also holds that the Trustee will have discharged their duties to their beneficiaries if instead of adopting the above course they pay the amounts withheld into the Insular Treasury and notify their beneficiaries that they have done so, in order that they themselves may file an application with the Treasurer for credit or refund of the amounts withheld from

758

their dividends and paid into the Treasury. Since the beneficiaries bear the ultimate burden of the tax, there would seem to be little doubt that they may ask for a refund under the circumstances existing in this situation. In the latter case, of course, the burden would be on the beneficiaries themselves to pursue this remedy. The Trustees will have discharged their duties to their beneficiaries by advising them of their rights. In either case it would be proper for the Trustees to charge to the respective beneficiaries any expenses incurred on their behalf.

Until such time as the Courts of Puerto Rico shall pass upon the validity and availability of the remedy outlined by the Attorney General, this Court will retain jurisdiction of this suit, and until the procedural matters have been fully passed upon by the Insular courts. See Spector Motor Co. v. McLaughlin, 323 U.S. 101–105, 65 S.Ct. 152, 89 L.Ed. 101. If it should appear that the Insular courts hold that the procedure followed is within the provisions of the Puerto Rican law, the matter would then have to proceed through the Insular courts. Otherwise, this Court will proceed with this suit and take such measures as may seem adequate and proper when the time arises. It is so Ordered.