Olga SHEPARD and John Doe, Plaintiffs,

v.

FIRST FEDERAL SAVINGS BANK OF PUERTO RICO and Juan Agosto Alicea, Secretary of the Treasury of the Commonwealth of Puerto Rico, Defendants.

Civ. No. 85–2070 (JAF).

United States District Court, D. Puerto Rico.

Dec. 27, 1985.

**1360**

Norberto Medina Zurinaga, Hato Rey, P.R., for plaintiffs.

Jorge E. Pérez Díaz, Federal Litigation Div., San Juan, P.R., for defendants, Juan Agosto Alicea.

Antonio R. Escriba, San Juan, P.R., for First Federal Sav. Bank of P.R.

## OPINION AND ORDER

FUSTE, District Judge.

This is an action seeking declaratory judgment and injunctive relief of three (3) laws approved by the Legislature of Puerto Rico, to wit: Law No. 1 of August 12, 1985,[1] Law No. 1 of October 8, 1985,[2] and Law No. 6 of October 16, 1985,[3] (hereinafter referred to as "the Laws"). The two latter laws become effective on January 1, 1986. These laws were enacted to curb the use of bearer certificates of deposit as vehicles of tax evasion and money laundering. They also establish an alternative rate for income taxation of interest on savings.

The facts of the present case are not in dispute. These are as follows:

Plaintiff Olga Shepard is the trustee of a trust solely created to avoid the effect of the mentioned laws and to hold and manage as its sole asset two (2) certificates of deposit payable to the bearer in the amounts of $50,000 and $52,300, respectively. Plaintiff John Doe is the true equitable holder of the certificates of deposit. John Doe will not disclose his identity so as to preserve what he understands to be his absolute constitutional privilege against self-incrimination. In order to preserve their rights, the grantor Doe and the trustee Shepard invoke jurisdiction over the present case based on Federal Question. The faltering jurisdictional allegation is that the above-referenced laws are unconstitutional, inasmuch as they violate plaintiffs' rights guaranteed under the Fifth and/or Fourteenth Amendments to the Constitution of the United States. It is further claimed that the area of regulation by said laws is preempted under Article VI of the Constitution of the United States and by The Federal Home Loan Banks Act, 12 U.S.C. §§ 1421–1459.

Co-defendant First Federal Savings Bank of Puerto Rico, hereinafter referred to as "First Federal", has presented a responsive allegation requesting that all actions pertaining to it be stayed. First Federal wants to be let alone. It states that the actual controversy is one between the Department of Treasury of Puerto Rico, ("De-

---

**1.** At this time there is no official citation for said law in Laws of Puerto Rico Annotated.

**2.** To be codified at 13 L.P.R.A. §§ 3011(c), 3022(b)(K), 3024(10), 3035(b)(c)(d), 3143A, 3147(A)(B), 3301A, 3322(a)(2), 3411(a)(13), 3421(A).

**3.** To be codified at 13 L.P.R.A. §§ 3024(9), 3145(d), 3147A, 3301.

partment"), and plaintiff. The Department has requested the dismissal of the present case based on the statutory language of the Butler Act, 48 U.S.C. § 872.

The matter was heard by the Court on December 3, 1985. Documentary evidence was received.[4] The parties submitted the controversy on the basis of their pleadings, allegations, evidence, and argument. The Court is not convinced of the merits of the declaratory and injunctive relief sought by plaintiffs. The amended complaint governing the controversy will be dismissed based on the following findings and conclusions. Fed.R.Civ.P. 52.

### Law Number 1, August 12, 1985:

Plaintiffs seek injunctive relief from the provisions of the above-quoted law and regulations promulgated thereunder. Generally, said law provides a mechanism under which the Department of the Treasury requires all banks and savings and loan institutions issuing bearer certificates of deposit to act as a withholding agent, retaining 20% of the total amount deposited. In the event that the taxpayer does not elect to request an administrative release of the retained monies,[5] he must pay a 20% tax, be it through the mentioned withholding or by direct payment to the Department. In the case of a taxpayer who has not resorted to any of these alternatives by December 31, 1985, the financial institution will automatically withhold 20% of the principal and interest accrued until said date, and remit it to the Department with whatever information it has available on the identity of the owner or bearer of the particular certificate of deposit. See Sections 5(b)(1) and 10(f) of the regulations.

### Law No. 1 of October 8, 1985 and Law No. 6 of October 16, 1985

Law Number 1 of October 8, 1985 essentially establishes an alternative tax rate under which to pay taxes on interest income received during a taxable year. In general terms, the law authorizes financial institutions, if the taxpayer consents, to withhold and remit to the Secretary 17% of the interests to be paid out or accrued. The 17% withholding is a flat tax alternative to interest income being taxed as part of ordinary income under the regular tax rates.

The other relevant law, No. 6 of October 16, 1985, establishes the obligation of investment brokers and other financial institutions to report to the Department all monetary transactions over $10,000. Also, the law typifies the penalties that apply if said obligation is not met.[6]

### Legislative Background and Intent

The laws under scrutiny were enacted after the U.S. Department of Justice concluded a phase of operation "Greenback",[7] an investigation which culminated with the arrest of several employees and ex-employees of diverse banking institutions in Continental United States and Puerto Rico. The

---

**4.** The following documents were received in evidence: a) simple copy of Deed of Trust which had deleted the information concerning the grantor. This deed was submitted in response to the inquiries made by the Court regarding this document. Plaintiffs elected not to file a certified copy of the deed of trust showing full content; b) Photostatic copies of Certificates of Deposit with deletions of their due dates, certificate numbers, and interest paid out; c) copy of plaintiffs' Request for Admissions to co-defendant Juan Agosto Alicea, Secretary of Treasury; d) plaintiffs' Request for Admissions to co-defendant First Federal; and e) Answer by First Federal to said Request for Admissions.

**5.** Under this alternative, the taxpayer must submit to the Department copy of his Income Tax

Returns for the last ten (10) years along with a written communication certifying that the monies object of withholding have already been taxed or that they arise from sources of income which are exempt of taxation. Regulations under Law No. 1, of August 12, 1985 so provide.

**6.** Law No. 6 of October 17, 1985 does not impose a tax. This law deals with a reporting system under which financial institutions, brokers, and similar entities, declare to the Department the particulars of monetary transactions of over $10,000. We find that Olga Shepard, as trustee of a trust created to defeat "the laws", has no standing to attack the reporting requirements established by Law No. 6.

**7.** Operation Greenback took place in May, 1985.

basic criminal charge against the majority of those indicted in Puerto Rico was their failure to report to the Internal Revenue Service the details of the transactions relating to cash received in their trade or business over $10,000, in violation of 26 U.S.C. 6050I and 26 U.S.C. § 7203. As a result of operation Greenback, it came to be of public knowledge that bearer certificates of deposit constituted not only a loophole through which taxpayers evaded their income tax payment obligations, but also they were being utilized to launder monies which were the product of *malum in se* activities, such as narcotic and drug trafficking.[8]

At this point in time, the Government of Puerto Rico had to deal with not only the fiscal problems of generating tax revenue to cope with economical demands, but also had to put an end to the undesirable practices mentioned herein. On July 1, 1985, the government announced that all financial institutions would be required to keep a register of the identity of every purchaser of a bearer certificate of deposit. The government's intention was to implement this policy in a six-month phase-out plan so as to avoid panic among bank depositors. *See Report of the Joint Hearing of the Senate and House Finance Committees*, August 11, 1985. The inevitable occurred.

Confusion, concern, and *in extremis* attempts to avoid any kind of tax accounted for mass withdrawals of approximately $250 Million in deposits since June 6, 1985 to the time of the approval of Law No. 1 in August, 1985.[9] Seeking to detain the high fuge of capital from Puerto Rico banks, coupled with a legislative intent of promoting a more equitable tax burden[10] among all citizens, the present laws were enacted.

### Remedies under the Law

Law No. 1, of August 12, 1985, Section 3, provides for administrative and judicial review of procedures initiated by the Department action. The taxpayer adversely affected by an administrative decision under the law may request reconsideration within fifteen (15) days from the date the decision was notified. The Secretary of the Treasury must decide said request for reconsideration during a period of thirty (30) days after the request for reconsideration. After the Department enters its decision in reconsideration, the taxpayer adversely affected may request judicial review before the Superior Court of Puerto Rico; venue being determined by the place of residence of the taxpayer. The Superior Court will determine whether to affirm, reverse, or modify the administrative decision.[11] In

---

8. On October 13, 1985, the Legislature of Puerto Rico established the maximum taxable rate at 50%. *See* Law No. 5, of October 13, 1985, amending 13 L.P.R.A. § 3011, applicable to tax years after December 31, 1985, present tax tables will remain in effect up to and including income in excess of $32,000 but not more than $38,000. For income in excess of $38,000, the tax rate will be $12,467.20 plus 50% of the surplus earned over $38,000. Previously, the top tax bracket was $113,655 plus 67.55% for income in excess of $200,000. Bearer certificates of deposit circulated in high numbers. Many law-abiding citizens had taken the law in their hands. The Puerto Rico community was, however, shocked to learn that bearer certificates of deposit were being utilized for money laundering related to *malum in se* criminal activities. In approving the laws, the local government has afforded different treatment to the two cases contemplated herein. On the one hand, a certificate of deposit of monies generated by legal activities, i.e., professions, commerce, even though unreported for income tax purposes, is not an illegal activity for purposes

of criminal prosecution. In other words, the 20% flat tax is the maximum obligation of such legal taxpayer. On the other hand, if it be proved that the source of monies is related to criminal activities, then the 20% flat rate tax, as well as a potential criminal prosecution, would lie. *See* Section 3(f) of the regulations.

9. See testimony of the Secretary of the Treasury of the Commonwealth of Puerto Rico at the joint hearing of the Senate and House Finance Committees relating to proposed legislation then known as House of Rep. proposed bill 571 and Senate proposed bill 634, August 11, 1985.

10. *See* Legislative Exposition of Intent of Law No. 1, August 1, 1985, p. 1. *See also* footnote 8, *supra*.

11. Plaintiffs read the law as not granting judicial review. They claim that the Superior Court may refuse to review. Plaintiffs' confused interpretation stems from the fact that Law No. 1, of August 12, 1985, and the accompanying regula-

the case a taxpayer has not filed a request for release or has not paid the 20% tax by December 31, 1985, the banking institution will automatically withhold 20% of the lump sum of combined principal and interest. The amount withheld is sent to the Department of Treasury. At this stage of the proceedings, the administrative remedy available to the taxpayer is to request for a refund. *See* sec. 5 of Law No. 1, August 12, 1985. Such request must be filed before the Department within the period of ninety (90) days after the date of payment to the Department of the tax withheld. In this case, when the taxpayer has proven to the Department that the amount represented by the certificate of deposit has been already taxed or its source of income is tax exempt under the dispositions of the Income Tax Law of 1954, he will receive a release from the imposition of the 20% tax and the monies will be refunded with interests paid at the same rate it was accruing in the bank.

### Applicability of the Butler Act

Under the above-described legal scenario, plaintiffs request that we enjoin the collection of the 20% tax imposed under Law No. 1 of August 12, 1985 and declare unconstitutional all three (3) quoted laws as they relate to their two certificates of deposit. Co-defendant, Juan Agosto Alicea, Secretary of Treasury, has requested the dismissal under 48 U.S.C. § 872.

Section 872, in its relevant part, establishes that:

[N]o suit for the purpose of restraining the assessment or collection of any tax imposed by the Laws of Puerto Rico shall be maintained in the United States District Court for the District of Puerto Rico.

The case law interpreting Section 872 has consistently held that the U.S. District Court for the District of Puerto Rico should not interfere with the assessment or collection of local taxes, unless there is an irreparable, threatened injury to the taxpayer. Said exception materializes only when a tax statute does not afford an adequate remedy. *Smallwood v. Treasury of Porto Rico Tax Appeals,* 275 U.S. 56, 48 S.Ct. 23, 72 L.Ed. 152 (1927); *Paul Smith Construction Co. v. Buscaglia,* 140 F.2d 900 (1st Cir.1944); *Boyce et al. v. Buscaglia,* 77 F.Supp. 753 (1948); *Carrier Corp. v. Pérez,* 677 F.2d 162 (1st Cir.1982).

The case law has defined the concept of "adequate remedy" as being satisfied if there is a "plain, speedy and efficient remedy" available in the local forum. In *Carrier Corp. v. Pérez,* as a recent restatement of the law, it is expressed that:

A state remedy is adequate if it meets certain minimal procedural criteria which include an *opportunity* to raise the desired legal objections with the eventual *possibility* of Supreme Court review of that claim.

▮ Plaintiffs' argument directed to move the Court to declare that the laws under scrutiny are unconstitutional both on their face and in their application is not convincing. An in-depth analysis of the laws shows that an attack on their merits based on equal rights' violations, self-incrimination, and/or state impairment of contractual obligations, among others, are weak foundations upon which to pursue the invalidation of the laws. The Supreme Court of the United States has held that a tax assessment or collection which affords ultimately for judicial review is to be held constitutional. *Phillips v. Commissioner,* 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931); *Commissioner v. Shapiro,* 424 U.S. 614, 629, 96 S.Ct. 1062, 1071, 47 L.Ed.2d 278 (1975).[12]

Plaintiffs' argument that under Puerto Rico law there is no remedy also lacks

---

tions, are no jewel of drafting. We read the law and regulations as granting judicial review in all cases. The Superior Court must entertain the petition. Once entertained, it will affirm the administrative decision if warranted. Otherwise, a writ of revision will issue to reverse or modify said administrative decision.

12. Plaintiffs have alleged that compliance with Law No. 1 of August 12, 1985 and Law No. 1 of October 17, 1985 violates their Fifth Amendment right against self-incrimination. We cannot agree. The Fifth Amendment argument is moot. Plaintiff admitted at the hearing held on December 3, 1985, that the monies deposited

merit. Contrary to argument, Section 8 of Puerto Rico Public Law No. 1, of February 25, 1946, as amended by Law No. 12 of August 8, 1974, 32 L.P.R.A. § 3524, does not prohibit the Puerto Rico courts from exercising jurisdiction in cases where an injunction or restraining order is sought to prevent the levying or collection of taxes. Local law provides an exception under which the courts of Puerto Rico can issue injunctive relief to restrain the applicability of *any Act* under which it is alleged that the Commonwealth of Puerto Rico is depriving any person of any right, privilege or immunity which is "protected by the Constitution or the Laws of the Commonwealth of Puerto Rico or under the Constitution or Laws of the United States of America." We find no basis for plaintiff's contention that said exception is inapplicable to a constitutional challenge to tax laws enacted by the Legislature of Puerto Rico. As stated in *Boyce et al. v. Buscaglia,* 77 F.Supp. at 756, "the normal course is to allow tax questions to be decided in the local courts even though they involve constitutional questions." The exceptions to Butler Act prohibition of federal intervention are not present in this case.

Furthermore, we do not find merit in plaintiffs' contention that they could not bring their claim to the Puerto Rico courts. Plaintiffs' argument of federal preemption can be presented before the courts of the Commonwealth of Puerto Rico. *First Federal Savings v. Registrador de la Propiedad,* 113 D.P.R. 857 (1983), and *Llama v. First Mortgage Investors,* 113 D.P.R. 865 (1983).

## Conclusion

Plaintiffs should appear before the Department of Treasury and exhaust adminis-

trative remedies provided by law. If unhappy with the result, they can petition the local judiciary to review the administrative process. If the net result is as predicted here, plaintiffs should pay their 20% tax and be thankful, for they have been given the benefit of a law that is, for all material purposes, a tax amnesty. The 20% tax is lower than the financier's dream of capital gain tax. 13 L.P.R.A. 3117. Those complaining must be the individuals who kept the same amount of unreported money under a mattress. The owner of the certificate of deposit gets the benefit of a flat tax and the immunity from criminal prosecution if the source is legal. The mattress banker does not.

The requested relief as per amended complaint is DENIED. The case is hereby DISMISSED. Antonio Filardi's motion for intervention is DENIED AS MOOT. Judgment shall be entered accordingly.

IT IS SO ORDERED.

---

through the certificate of deposit are from legal sources, *see* footnote 8 of this Opinion. Under Law No. 1, of August 1, 1985, plaintiffs are immune from criminal prosecution or further tax penalties other than the payment of 20%. Sec. 3(f) of the regulations approved under Law No. 1 of August 12, 1985. *See, U.S. v. Verkuilen,* 690 F.2d 648 (7th Cir.1982); *U.S. v. Daly,* 481 F.2d 28 (8th Cir.1973), *cert. denied,* 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469; not recognizing Fifth Amendment rights when a "blanket"

assertion is made. As stated in the cases of *Fisher v. U.S.,* 425 U.S. 391, 399, 96 S.Ct. 1569, 1575, 48 L.Ed.2d 39 (1976), and *Couch v. U.S.,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), we adhere to the view that the Fifth Amendment protects against "compelled self-incrimination, where there exists a legitimate expectation of privacy." This cannot be claimed by having to give out his social security number and name, action which co-defendant First Federal Savings said that already had been realized.