Alberic GIROD, Debtor in Possession and on behalf of the Estate in Bankruptcy, Plaintiff,

v.

EL DIA, INC. and Silvia Licha, Defendants.

Civ. No. 84–3187 (JAF).

United States District Court, D. Puerto Rico.

July 29, 1987.

Harvey B. Nachman, Nachman & Fernandez-Sein, San Juan, P.R., for plaintiff.

Etienne Totti del Valle, Dominguez & Totti, San Juan, P.R., for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

This action for damages against El Día, Inc., publisher of the local newspaper "El Nuevo Día", and reporter Silvia Licha,

stems from a series of allegedly libelous newspaper articles published by the mentioned defendants during 1983 and 1984. Plaintiff Alberic Girod, former president of Girod Trust Company, now an insolvent trust company in liquidation, claims that he is not a public figure and that El Día, Inc. and reporter Silvia Licha cannot require him to bring forward evidence of the existence of actual malice in publication, all in reckless disregard for the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986).

The case now stands submitted on summary judgment. This court, *sua sponte*, requested the parties to address the issues discussed herein. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). We now find that there is no genuine issue of material fact impeding the entry of summary judgment. Fed.R.Civ.P. 56. We find for defendants.

## I.

Alberic Girod was a highly-visible entrepeneur who, at age 25, established his own business, a trust company. The institution became known as Girod Trust Company. The trust company, founded in 1976, was capitalized through public offering under the securities laws of the Commonwealth of Puerto Rico, 10 L.P.R.A. secs. 851–895. On or about 1982, Girod Trust Company acquired interests in other businesses, including mortgage services, banks, and other holding companies located in Puerto Rico, Panama, Dominican Republic, Jamaica, and Switzerland.[1] By 1983, the trust company became the third largest financial institution in Puerto Rico.[2]

The aura of grandeur which surrounded Girod Trust Company and Alberic Girod was one of definitive success and high-profile efficiency. The company became the center of attention in the business circles as reflected by newspaper coverage clippings, with positive appraisal of Alberic Girod's capabilities in steering the trust company toward the success it had achieved.[3] The court takes judicial notice of the fact that Girod Trust regularly announced tempting deals regarding deposits and interest returns through the media. The famous bearer certificates flourished. *Cf., Shepard v. First Federal Sav. Bank of Puerto Rico*, 625 F.Supp. 1359 (D.P.R. 1985). We also take judicial notice of the fact that as a result of the Trust Company's aggressiveness, Girod became a known tycoon in both business and political circles. Fed.R.Evid. 201. Newspaper and business-magazine coverage clearly associated Girod Trust Company's success with the intervention of its president, plaintiff Alberic Girod. *See* material cited in note 3, this opinion and order.

Around 1983, these commendable reports turned into sour observations regarding the company. Details of ongoing investigations by the local Department of Treasury and the FDIC surfaced publicly. As a result thereof, defendants became interested in publishing articles regarding the status of the Girod Trust Company. It became obvious that the interest was directed to the broad spectrum of facts and circumstances regarding Girod Trust Company and the investigation being carried out by the Treasury Department and the FDIC. Silvia Licha obtained, through an unnamed source, confidential data of the FDIC and/or the Treasury Department later utilized to formulate the publications in question. Her coverage of the trust operations was wide ranging and far reaching. Since December 15, 1983, when "El Nuevo Día" published an article entitled *Girod Fired From His Own Bank* up until December 19, 1984, Silvia Licha routinely wrote articles depicting the unpredictable, erratic situation Girod Trust Company was under.[4]

---

1. *See* Answer to Interrogatories, docket document No. 27, Annex B, Exh. 22.

2. *See* docket document No. 1, para. 11.

3. *See* docket document No. 44, Attachment I.

4. *See* Attachment A, this memorandum opinion and order, with titles and dates of the articles published by defendant. In a nutshell, the central topic of these articles is the negative economic condition of Girod Trust Company and the investigations by the FDIC and the local

All the articles were the product of tips from what was classified as "[p]ersons whom I had come to consider highly reliable from past experience in dealing with them in my capacity as a reporter of financial and business news." *See* Sworn Statement subscribed by Silvia Licha, Attachment to docket document No. 44. The publication process she followed before finally publishing the articles was as follows:

[I]n researching and writing my articles I followed, as it is my practice, a pattern of verification and cross-checking of information. I also made diligent and reasonable efforts to obtain Mr. Alberic Girod's version or comments, and I included said version or comments, whenever Mr. Girod offered them in response to said efforts.

After receiving this tip and related information from my confidential source, I personally made telephone calls on August 10, 1984 to Alberic Girod, ... (a member of the Girod Trust Board). None of these Girod executives were available to speak to me on that date (8/10/84). In each instance I left a message that it was very important that my call be returned because it concerned FDIC requirements regarding Girod Trust Company. None of my calls was [sic] returned....

In the process of writing the article, I called the FDIC and spoke to Mr. Alan Whitney, the information officer in Washington, D.C. Mr. Whitney's comments were as set forth in the article that was eventually published in *El Nuevo Día* on Wednesday, August 15, 1984. [I] decided to hold back the publication of the article until I could make a personal visit in a final attempt to obtain the comments and reaction of Mr. Alberic Girod or some other higher ranking official. On Tuesday, August 14, 1984 ... I went to the main branch and executive offices of Girod Trust Co. in Old San Juan.... I waited patiently for 1½ hours but to no avail. On the afternoon and evening of August 14th I put the final touches on my article, and it was decided to publish it in the *El Nuevo Día* edition of Wednesday, August 15, 1984.

■ Plaintiff alleges that Silvia Licha's articles over a year span prompted Girod Trust Company's depositors to conduct massive withdrawals of their deposits.[5] On August 17, 1984, the trust company was closed by the Treasury Department, Commonwealth of Puerto Rico. Notwithstanding the fact that the trust company had been closed, Silvia Licha's interest in Alberic Girod continued. Various publications were made between August 18, 1984 and December 19, 1984. Thereafter, Girod filed a Chapter 11 bankruptcy reorganization case, 11 U.S.C. secs. 1101–1130, where he requested permission from the bankruptcy court to prosecute the instant libel case on behalf of his estate in bankruptcy. The bankruptcy court granted his request on December 19, 1984.[6] On said date, the present case was filed. Jurisdiction was invoked under 28 U.S.C. sec. 1334(b). *In re Turner*, 724 F.2d 338 (2d Cir.1983); *In re Crystal Mfg. & Packaging, Inc.*, 60 B.R. 816 (N.D.Ill.1986).

We also take judicial notice of the fact that Alberic Girod recently pled guilty before this court in criminal cases 86–536 and 87–040, on six counts charging violations of title 18 U.S.C. secs. 656 and 2, for willfully and knowingly misapplying and converting to his own use Girod Trust Company funds. The charges to which Mr. Girod pled guilty cover the period June 8, 1982 to March 17, 1983. Although we do not decide the present case based on the results of the criminal prosecutions, the pleas of guilty and sentences reveal, in the context of this

Treasury Department. In almost all the articles, Mr. Girod is mentioned directly.

5. *See* docket document No. 1, Complaint, para. 16, admitted as true by defendants' Answer to Complaint, docket document No. 8, para. 10.

6. Defendants aver that the article published on December 13, 1983 is barred by the applicable statute of limitations. This allegation is without merit. *See* Sec. 1873, Civil Code, 31 L.P.R.A. sec. 5303 (1930); *e.g., Barrientos v. Gobierno de la Capital,* 97 D.P.R. 552 (1969). Once the plaintiff filed this motion with the bankruptcy court on October 12, 1984, he interrupted the prescription or time-for-suit provision.

case seen as a whole, that there were legitimate concerns at the times material to this suit about the operations of the trust company.

## II.

 As previously advanced, the issue before us is whether defendant Silvia Licha's coverage of Mr. Girod and Girod Trust Company's operations involved public or societal interests and whether plaintiff had voluntarily entrusted himself in the same or was drawn into the particular public controversy. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *e.g., Clavell v. El Vocero de P.R.,* 84 J.T.S. 79 (1984). The concern for protecting citizens from being falsely or maliciously injured in their reputation or business is contained in Puerto Rico's Law of Libel and Slander, contained in the 1902 Code of Civil Procedure, 32 L.P.R.A. secs. 3141–3149. *See Vázquez Rivera v. El Día, Inc.,* 641 F.Supp. 668, 670 (D.P.R.1986). However, state laws must conform with the federal interest in this area of constitutionally-related activity in that local jurisdiction cannot interfere with the rights guaranteed under the first amendment to the United States Constitution. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 757–58, 105 S.Ct. 2939, 2945, 86 L.Ed.2d 593 (1985). The first amendment right means that the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. *See Police Department of Chicago v. Mosley,* 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). This broad principle is subject to certain qualifications, and one of these is when speech is a defamatory falsehood. *See Gertz v. Robert Welch,* 418 U.S. 323, 347, 94 S.Ct. 2997, 3010, 41 L.Ed.2d 789 (1974). When a person is a victim of the defamatory communications of a third party, he is entitled to sue notwithstanding the other party's first-amendment rights. There is no constitutional value in false statements of fact. *Gertz,* 418 U.S. at 340, 94 S.Ct. at 3007. The Supreme Court has established that a public figure whose reputation is injured by defamatory falsehood which is

an issue of public or general interest has no recourse unless he can meet the rigorous requirements of *New York Times v. Sullivan,* 376 U.S. 254, 269, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964); *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 164, 87 S.Ct. 1975, 1996, 18 L.Ed.2d 1094 (1967). The case law as to this type of plaintiff is abundant and consistent. Under the cases, plaintiff's role within the banking institution was prominent. In less than two years he had brought his company to the third position in Puerto Rico's banking spheres. It is undisputed that Girod had the direct control of Girod Trust Company at the moment of defendants' initial publication.

Of course, we recognize that being an influential businessman and tycoon does not by itself make plaintiff a public figure. However, when the entrepreneur exhibits an active and public ostentation of his role within the business and banking community, as well as the social and political spheres, he becomes, under those circumstances, a public figure. *See Waldbaum v. Fairchild Publications, Inc.,* 627 F.2d 1287 (D.C.Cir.), *cert. denied,* 449 U.S. 898, 101 S.Ct. 266, 66 L.Ed.2d 128 (1980). There is no question about the fact that Girod attained a role of public prominence in the banking and commercial sectors of Puerto Rico. A deciding factor was the role he played within Girod Trust Company's crisis over which Silvia Licha wrote the articles. The financial health of the trust company was a public issue, since the fate of Girod Trust Company as a commercial banking institution in a small island community, involved and affected the property of many persons other than Alberic Girod. This satisfies the first aspect of the test utilized to determine whether Alberic Girod was at least a limited public figure for the purposes of this case. *See Bruno & Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583, 587 (1st Cir.1980) (the linchpin of analysis had become, in the opinion of the plurality, simply whether the utterance concerns an issue of public or general concern). More so, in the instant case we are not confronted only with a successful en-

trepreneur subject to alleged defamatory comments of his business dealings; here we have a highly-visible, self-made businessman who founded his own trust company, gave it his own last name, and made it a point that the public would so perceive. *See Simmons Ford, Inc. v. Consumers Union*, 516 F.Supp. 742 (S.D.N.Y.1981). The case of *Trans World Accounts, Inc. v. Associated Press*, 425 F.Supp. 814 (N.D. Cal.1977), is analogous to the present controversy. In *Trans World*, a publication came about as a result of an investigation into plaintiff's business activities by a governmental agency. It reflected a determination that some of those activities created a sufficient risk of harm to a significant segment of the public necessitating certain enforcement proceedings to correct the situation. The Northern District of California found that the public was entitled to know what was going on. *E.g., Orr v. Argus-Press Co.*, 586 F.2d 1108 (6th Cir. 1978) (reporter has the right to comment on matters of public importance).

Coming back to our case, plaintiff invited public attention to his views in his business operations prior to the alleged defamatory publications and was a central figure within the public question of the Girod Trust Company fate, thus being able to be categorized as a limited public figure. *Gertz*, 418 U.S. at 330, 94 S.Ct. at 3002. Plaintiff is subject to the strictures of *New York Times*, to wit: the showing of malice or reckless disregard for the truth to overcome constitutional protection for freedom of the press. *Lerman v. Flynt Distributing Co., Inc.*, 745 F.2d 123 (2d Cir.), *cert. denied*, 471 U.S. 1054, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985). Alberic Girod had to bring forward clear and convincing evidence that defendants published the articles with actual malice, i.e., reckless disregard for the truth. This requirement

calls for the plaintiff to prove more than would be necessary under the preponderance-of-the-evidence standard but something less than what the beyond-a-reasonable-doubt standard requires.

*Bose Corp. v. Consumers Union of the United States, Inc.*, 692 F.2d 189, 195 (1st Cir.1982), *citing Yiamouyiannis v. Consumers Union of the United States, Inc.*, 619 F.2d 932, 940 (2d Cir.1980).

### III.

■ The Supreme Court has established that plaintiff must bring forward his evidence to satisfy the clear and convincing evidentiary standard when confronted with a motion for summary judgment alleging public figure or public official. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986). Based on the applicable law, the facts of this case show that Silvia Licha followed the correct publishing procedure when she verified and double checked the data she printed as part of her newspaper stories. The fact that she had access to or received tips from federal and local investigation did not operate as a bar to the publishing of stories containing material of interest to depositors and others within the banking and commercial circles. We find that the newspaper stories were not libelous publications affecting Alberic Girod personally.[7] *See Sanfiorenzo Acosta v. El Mundo, Inc.*, 87 D.P.R. 281 (1963). As a matter of fact, if the publications caused any actionable damage to the trust company itself, which seems to be one of Girod's indirect claims, the proper-party plaintiff is not before the court.

Accordingly, summary judgment shall be entered on behalf of defendants dismissing plaintiff's complaint.

IT IS SO ORDERED.

---

7. A cause of action for libel may arise from a series of publications referring to or implicating the injured party, depending on the context in which certain information is published. *See Old Dominion Branch No. 496 National Assoc. of Letter Carriers v. Austin*, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974); *Ollman v. Evans*, 750 F.2d 970, 976 (D.C.Cir.1984); *De Savitsch v.* *Patterson*, 159 F.2d 15 (D.C.Cir.1946); *Gintert v. Howard Publications, Inc.*, 565 F.Supp. 829 (N.D.Ind.1983). Here, the published information has been analyzed in its broad aspect, to conclude that the newspaper stories were not libelous publications affecting Alberic Girod personally.

## ATTACHMENT A TO OPINION AND ORDER
### DATED JULY 29, 1987
#### Allegedly Defamatory Articles*

| No. | Date | Title |
| --- | --- | --- |
| 1 | December 15, 1983 | "Girod Despedido de su Propio Banco" (Girod Dismissed From His Own Bank) |
| 4 | July 20, 1984 | "El Girod Trust Bajo la Mirilla de Hacienda" (Girod Trust Under the Sight of Treasury Department) |
| 5 | August 15, 1984 | "Ultimatum Federal a Girod Trust" (Federal Ultimatum to Girod Trust) |
| 6 | August 16, 1984 | "Retiran $4.5 Millones de Girod" ($4.5 Million Withdrawn from Girod) |
| 7 | August 17, 1984 | "Liquidación Total del Fideicomisco" (Total Liquidation of the Trust) |
| 8 | August 18, 1984 | "Los Cheques No Tienen Banco" (The Checks Have No Bank) |
| 9 | August 18, 1984 | "El Puesto Le Queda Grande" (The Position is Too Big for Him) |
| 10 | August 19, 1984 | "Cronología de la Crisis y la Caída Fatal" (Chronology of the Crisis and Fatal Fall) |
| 12 | August 21, 1984 | "Compraron a Girod con un Gran Incentivo" (Girod Bought with a Great Incentive) |
| 13 | August 22, 1984 | "Aceptaban el Dinero Sin Preguntas" (Moneys Accepted Without Asking Questions) |
| 17 | August 30, 1984 | "Girod Sí Era Insolvente" (Girod Indeed Was Insolvent) |
| 18 | August 30, 1984 | "Alega Solidez el Girod de Santo Domingo" (Girod Santo Domingo Alleges Solidity) |
| 19 | August 31, 1984 | "No Honran los Certificados de Girod" (Girod Certificates Not Honored) |
| 21 | September 8, 1984 | "Girod de Vuelta a los Negocios" (Girod Back to Business) |
| 22 | September 9, 1984 | "El Imperio Girod: Obsesión y Caída" (The Girod Empire: Obsession and Fall) |
| 26 | September 26, 1984 | "Demanda un Banco a Alberic Girod" (Alberic Girod Sued by a Bank) |
| 28 | September 28, 1984 | "Demandan a Girod por Segunda Vez en Una Semana" (Girod Sued for a Second Time in One Week) |
| 31 | October 4, 1984 | "Quiebran Girod y Dos Directores de Su Banco" (Girod and Two Directors From His Bank File in Bankruptcy) |
| 32 | October 5, 1984 | "Cinco Responsables por la Quiebra de Girod" (Five Persons Responsible For Girod's Bankruptcy) |
| 34 | October 25, 1984 | "Guaranty Insurance en las Manos de Sus Directores" (Guaranty Insurance in the Hands of its Directors) |
| 38 | December 19, 1984 | "Ordenan el Cierre de Guaranty Insurance Co." (Guaranty Insurance Ordered Closed) |

* This compilation is based on plaintiffs' Answers to Interrogatories Nos. 4 (identification of all articles plaintiffs claim contain defamatory statements concerning Alberic Girod) and 5 (quotation of specific statements alleged to be defamatory).